IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**ANTHONY LOLIN JIMENEZ, SR.#122076** *
  **#3B5239**
                                              *
**Plaintiff**
                                              *
**v.**                                               Civil Action No. PWG-16-3721
                                              *
**WELLS FARGO, NATIONAL**
  **ASSOCIATION,**                          *
**KATHLEEN DEAN, Remediation Analyst,**
                                              *
**Defendants**
                                           ***

### MEMORANDUM OPINION

Self-represented Plaintiff Anthony Lolin Jimenez, Sr. is suing Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and its employee Kathleen Dean. Defendants move to dismiss the Amended Complaint, ECF No. 18, pursuant to Federal Rule 12(b)(6) for failure to state a claim upon which relief can be granted. ECF No. 19. Jimenez filed a "Response and Motion to Strike Defendants[,] Motion to Dismiss Amended Complaint Pursuant to F.R.C.P. 12(a)(1)[,] (f)." ECF No. 24. Defendants filed a Reply. ECF No. 25. A hearing is not necessary. *See* Loc. R. 105.6. Because Plaintiff fails to state a claim, his Amended Complaint will be dismissed.

### Background

Jimenez is incarcerated at the Crowley County Correctional Facility ("CCCF") in Olney Springs, Colorado.[1] On November 14, 2016, Jimenez filed a Complaint against Wells Fargo and Dean, claiming that Defendants improperly refused to give him access to various certificates

---

[1] Jimenez attached to the original Complaint a copy of his judgment of conviction in *Colorado v. Jimenez*, Case No. D0602000CR000178 (Dt. Court of Colorado, Teller County). ECF No. 1-3. In that case, Jimenez was convicted on March 25, 2004 after a jury trial of second degree murder and related offenses and sentenced to a total of 54 years of imprisonment. *Id.*; *see* Am. Compl. 2, ¶ 5(a).

from a mortgage-backed security trust in which he alleges he has an interest, in violation of the Privacy Act of 1974, 5 U.S.C. § 552a. ECF No. 1. Defendants moved to dismiss, arguing, *inter alia,* that § 552a "is not actionable against a non-governmental agency." ECF No. 7. Jimenez opposed the motion, ECF No. 14, and filed his Amended Complaint. I struck Defendants' original motion to dismiss in light of their Motion to Dismiss Plaintiff's Amended Complaint. ECF No. 23.

In the Amended Complaint, Jimenez abandons his Privacy Act claim and instead raises claims of tort violations as well as "other undefined 'per se' infractions, etc." Am. Compl. 7. He alleges that he has "determined and identified a Security CUSIP[2] related to his criminal case, D0602000CR000178." *Id.* at 5, ¶ 5.b. Jimenez contends "the transaction that encumbered CUSIP 316345602 consisted of mortgage/asset back securities either publicly sold or privately traded." *Id.* ¶ 5.c.

Jimenez maintains that he requested information from Wells Fargo, the alleged custodian of the record, but Kathleen Dean denied his requests, "claiming privacy/privilege right." *Id.* In support of his original Complaint, Jimenez filed two emails that Dean sent in response to his request, both asking him to provide a specific address and the borrower's name. *Id*; ECF No. 1-6. Jimenez responded that he wanted the "'registration statement; and the original issued certificate, QUSIP [sic] 316345602," to which Dean replied that the certificates were unavailable and registration statements are private documents. Am. Compl. 5, ¶ 5.c.

Jimenez's prolix and disjointed Amended Complaint and other filings all but defy comprehension. But, the Court recognizes its obligation to attempt (if possible) to construe the

---

[2] CUSIP is the acronym for the Committee on Uniform Securities Identification Procedures, a system used to identify securities including registered stocks and U.S. government and municipal bonds. *See* https://www.sec.gov/answers/cusip.htm.

pleadings of self-represented litigants like Jimenez liberally. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). As best as I can discern, Jimenez alleges that Defendants are liable under various imagined causes of action because the District Attorney's Office in Colorado or the Fourth Judicial District of Colorado "Mortgaged" his criminal case, "giving rise to an undisclosed debt obligation, default, judgment, foreclosure, lien" that "was converted into a Mortgage Backed Security then sold in the Pooling & Servicing Agreement" to which Wells Fargo was a party. Am. Compl. 8, ¶ 5; Notice of Claim 3, ECF No. 18-4. Specifically, "Wells Fargo, National Association [sic] was the Securities Administrator/Master Servicer to the transaction reflected by the Pooling and Servicing Agreement recorded with the SEC under COMM NO. 333-115122, November 1, 2004" Am. Compl. 5, ¶ 5.g. He claims that two Form 1099-Bs[3] were filed in relation to that financial security, listing him as the "payor" and "receiver," but he was not aware of, nor did he authorize the security or the filings. *Id.* at 5–6, ¶ 5.c–h. He views these alleged financial transaction as part of "the schemes of the Defendants and their co-conspirators," and alleges that "Defendants and their co-conspiractors are directly or indirectly responsible, in-whole or in-part, for the Plaintiff's liberty being stolen then marketed

---

[3] The Internal Revenue Service requires that "[a] broker or barter exchange" file a Form 1099-B for each person:
- For whom, they sold stocks, commodities, regulated futures contracts, foreign currency contracts, forward contracts, debt instruments, options, securities futures contracts, etc., for cash,
- Who received cash, stock, or other property from a corporation that the broker knows or has reason to know has had its stock acquired in an acquisition of control or had a substantial change in capital structure reportable on Form 8806, or
- Who exchanged property or services through a barter exchange.

*See* Form 1099-B, Proceeds From Brother and Barter Excvhange Transactions, https://www.irs.gov/uac/about-form-1099b.

Jimenez submitted a document that purports to be an IRS Form 1099-B for the tax year 2013. This document identifies Jimenez as both a payer and recipient, and provides no evidence in support of Jimenez's allegations. ECF No. 13-2.

for financial gain and other benefits, for all those involved except the Plaintiff." *Id.* at 5–6, ¶ 5.g–i; 10, ¶ 13. The very notion that Defendants or their alleged co-conspirators collateralized his criminal proceedings is not only implausible; it is preposterous. Based on these nonsensical allegations, Jimenez raises claims of "deceptive trades, negligence, negligence per se, breach of duty, breach of fiduciary duty, civil conspiracy," and "other undefined 'per se' infractions, etc." *Id.* at 7. In his Response, Jimenez clarifies that his Amended Complaint is not "based on personal injury," but rather is "a contract issue [and the absence thereof] resulting in a deceptive trade practice and *possible* personal injury." Pl.'s Resp. 2, ¶ 4 (emphasis and brackets in original).

As redress, Jimenez asks this Court: (1) to order the U.S. Marshal to take custody of the alleged "mortgage file"; (2) to order Defendants to "produce the explicit contract authorizing the business relationship between [Jimenez] and WELLS FARGO, N.A. *and/or* their co-conspirators"; and (3) to order Defendants to reimburse him for "twice the face value of instrument CUSIP . . . , and all of the proceeds that they have received including the maximum allowed interest rate by law," in addition to $50 million for loss of life, liberty and property. Am. Compl. 11. In a word, Plaintiff's claims are simply humbug.

## Motion to Strike

Jimenez moves to strike Defendants' motion pursuant to Rule 12(a) and (f), contending that it is "immaterial, . . . insufficient," "misleading and distractive." Pl.'s Resp. 1. To the contrary, Defendants' motion and supporting memorandum succinctly state their arguments in support of dismissal. I will deny Jimenez's motion to strike.

**Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed.R.Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "'to test the sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016). The sufficiency of a complaint is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555; *see also Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013) ("It is now well established that mere conclusory and speculative allegations are not sufficient to withstand a motion to dismiss.").

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Erickson*, 551 U.S. at 94). From those allegations, it must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *Id.* (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)). While a court must accept as true all the factual allegations contained in the complaint, legal conclusions

drawn from those facts are not afforded such deference. *Iqbal*, 556 U.S. at 678 (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

A *pro se* litigant's complaint should not be dismissed unless it appears beyond doubt that the litigant can prove no set of facts in support of his claim that would entitle him to relief. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). However, liberal construction does not absolve Plaintiff from pleading plausible claims. *See Holsey v. Collins*, 90 F.R.D. 122, 128 (D. Md.1981) (citing *Inmates v. Owens*, 561 F.2d 560, 562–63 (4th Cir. 1977)).

> It is neither unfair nor unreasonable to require a pleader to put his complaint in an intelligible, coherent, and manageable form, and his failure to do so may warrant dismissal. District courts are not required to be mind readers, or to conjure questions not squarely presented to them.

*Harris v. Angliker*, 955 F.2d 41, 1992 WL 21375, at * 1 (4th Cir. 1992) (per curiam) (internal citations omitted).

## **Discussion**

Defendants move for dismissal of the Amended Complaint on the following grounds: (1) it names the wrong parties as Defendants; and (2) it fails to state a claim. Defs.' Mem. 5, 6.

### *Wrong Defendants*

Jimenez maintains that CUSIP 316345602 is a mortgage or other instrument that was created and connected with his criminal case. He bases this assertion on the results of a third-party vendor search, *see* Compl. 2; Am. Compl. 5, ¶ 5.b, which he attached in support of his initial Complaint and referenced in the Amended Complaint. CUSIP Results, ECF No. 1-4; *see* Am. Compl. 5, ¶ 5.b. The attachment shows that "CUSIP 316345602 refers to a Fidelity Balanced K Fund (ticker symbol FBAKX), a mutual fund under the control of Fidelity, *not* Wells

Fargo." Defs.' Mem. 5; *see* CUSIP Results. Where as here, allegations in the Complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Investors v. Commercial Builders*, 936 F.2d 1462, 1465 (4th Cir. 1991). Plaintiff also attached a Pooling and Servicing Agreement ("PSA") to which Wells Fargo is a party and in which Wells Fargo is identified as "Master Servicer and Securities Administrator." ECF No. 1-5. He argues that "[t]his defendant along with co-conspirators, collectively engaged in a contract agreement to purchase unlawfully created debt instruments [such as] CUSIP 316345602." Pl.'S Resp. 5. But, the PSA, which prevails over Plaintiff's allegations, *see Fayetteville Investors*, 936 F.2d at 1465, does not list Fidelity as a party. Consequently, Plaintiff's claim that Wells Fargo incurred liability with respect to how it handled CUSIP 316345602, when there is no uncontradicted allegation showing that Wells Fargo was involved with CUSIP 316345602 at all, is not "plausible on its face." *See Twombly,* 550 U.S. at 570. Jimenez's claims are not asserted sufficiently against Wells Fargo or it employee Kathleen Dean and are subject to dismissal.

*Failure to State a Claim*

Despite having had the opportunity to amend, Plaintiff's Amended Complaint insufficient to give Defendants notice of "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (internal quotation marks omitted). In particular, it purports to raise tort claims and "other undefined 'per se' infractions" based on bare and conclusory phantasmagorical allegations of fact and legal conclusions.

1. *"Deceptive Trades" Claim*

Insofar as Jimenez seeks to raise a claim of "deceptive trades," he does not identify the law, statute, or case precedent on which his claim is premised. He asserts that an instrument related to his criminal case was created by an unauthorized third party (identified in an

7

attachment to his pleadings as the District Attorney's Office in Colorado and in the Amended Complaint as the Fourth Judicial District of Colorado) and that Wells Fargo was the administrator or custodian of that instrument. This is nonsense.  He seemingly contends that Wells Fargo committed "deceptive trades" because "he did not authorize any third party to act on his behalf for purposes of commerce, trade, etc." Am. Compl. 6, ¶ 5.i.  Of import, Jimenez does not allege that Wells Fargo created the purported instrument and, as discussed above, attaches a document showing that CUSIP 316345602 is not in a Wells Fargo fund.  Further, the document he attaches to show that Wells Fargo manages CUSIP 316345602 does not support that allegation.  Consequently, Jimenez fails to state a claim of "deceptive trades" against Defendants.

2. *Neglience Claim*

Although it is unclear where all of the alleged violations took place, the allegations against Defendants arise, at least in part, from Wells Fargo's communications with Jimenez while Wells Fargo was located in Maryland.  Am. Compl. 2, ¶¶ 2–3; 5, ¶ 5.c.  Under Maryland law, the elements of a negligence claim are: "(1) that the defendant was under a duty [to the plaintiff], (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Lara v. Suntrust Mortg. Inc.*, No. DKC-16-0145, 2016 WL 3753155, at *5 (D. Md. July 14, 2016) (alterations in original) (quoting *Chicago Title Ins. Co. v. Allfirst Bank,* 905 A.2d 366, 378 (Md. 2006)). Because CUSIP 316345602 does not refer to a Wells Fargo fund and the PSA does not show that Wells Fargo had a role in its management, Jimenez fails to establish a duty owed to him by Defendants.  Moreover, to recover under a negligence claim in Maryland, the resultant injury must be personal injury, not economic loss.  *See Roy v. Ward Mfg., LLC*, No. RDB-13-

3878, 2014 WL 4215614, at *4 (D. Md. Aug. 22, 2014) ("A plaintiff alleging only … economic loss[] is generally barred from bringing his claim under a products liability or any other type of tort theory. 'Under the economic loss rule, courts generally will not permit negligence claims that allege only economic loss.'" (quoting *Nat'l Labor College, Inc. v. Hillier Group Architecture N.J., Inc.*, 739 F. Supp. 2d 821, 832 (D. Md. 2010))). Plaintiff concedes that he has not incurred any personal injury, and that the case is based on "*possible* personal injury." See Pl.'s Resp. 2, ¶ 4. Plaintiff fails to state a claim in negligence. *See id.*

   3. *Negligence Per Se Claim*

   Under Maryland law, the elements of a negligence *per se* claim are:

   1) the violation of a statute designed to protect a specific class of persons; 2) that plaintiff is a member of this class of persons; 3) that the harm suffered by plaintiff is of the type that the statute was intended to protect against; and 4) that the violation was the proximate cause of the plaintiff's injuries.

*Essem v. Sone*, No. PWG-14-113, 2014 WL 4182615, at *3–4 (D. Md. Aug. 19, 2014) (quoting *Hart v. A.C.E. Taxi*, 442 F. Supp. 2d 268, 270 (D. Md. 2006) (citing *Brooks v. Lewin Realty III, Inc.*, 835 A.2d 616, 621 (Md. 2003))). Plaintiff fails to identify any statute designed to protect a class of people to which he belongs or that is designed to protect against the harm that Plaintiff allegedly suffered. *See id.* Therefore, he fails to state a claim for negligence *per se*. *See id.*

   4. *Breach of Duty and Breach of Fiduciary Duty Claims*

   Jimenez appears to base his breach of duty and breach of fiduciary duty claims on his contention that Wells Fargo "had a fiduciary duty to the named party on the debt instrument [Plaintiff], prior to the instrument's conversion, to verify these documents were in the file" and Wells Fargo "negligently or intentionally disregarded the absence of these documents as a common practice for the ultimate purposes of receiving the financial reward reflected on the face of the instrument." Am. Compl. 8, ¶ 4. Jimenez's assertion that the District Attorney's Office in

Colorado or the Fourth Judicial District of Colorado created an instrument that related to his criminal case and then transferred it to a residential mortgage trust that was administered by Wells Fargo is not only unsubstantiated by any of the documents he attaches that reference the instrument, but is on its face implausible.

Even if it were possible to discern concrete facts from the morass of Jimenez's filings (which it is not), they would not give rise to any fiduciary duty that Defendants, as a bank, owed Jimenez. "[A]s the Fourth Circuit has noted, 'banks typically do not have a fiduciary duty to their customers.'" *Walsh v. Bank of N.Y. Mellon*, No. GJH-15-00934, 2017 WL 239367, at *5 (D. Md. Jan. 19, 2017) (quoting *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 778-79 (4th Cir. 2013)); *see also Agomuoh v. PNC Fin. Servs. Grp.*, No. GJH-16-1939, 2017 WL 657428, at *8 (D. Md. Feb. 16, 2017) ("[B]anks do not owe a fiduciary duty to their customers."). Rather, "[i]t is well established that 'the relationship of a bank to its customer in a loan transaction is ordinarily a contractual relationship between debtor and creditor and is not fiduciary in nature." *Walsh*, 2017 WL 239367, at *5 (quoting *Spaulding*, 714 F.3d at 778-79 (quoting *Kuechler v. Peoples Bank*, 602 F. Supp. 2d 625, 633 (D. Md. 2009))). And, while exceptions exist, "[c]ourts have been exceedingly reluctant to find special circumstances sufficient to transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreement." *Id.* (quoting *Spaulding*, 714 F.3d at 778-79).

> The Maryland Court of Special Appeals has described only four special circumstances where a lender may become a fiduciary for the borrower. These special circumstances exist where the lender: "(1) took on any extra services on behalf of [the borrowers] other than furnishing ... money ...; (2) received a greater economic benefit from the transaction other than the normal mortgage; (3) exercised extensive control ...; or (4) was asked by [the borrowers] if there were any lien actions pending." *Id.*

*Id.* (quoting *Polek v. J.P. Morgan Chase Bank, N.A.*, 36 A.3d 399, 418 (Md. 2012) (quoting *Parker v. Columbia Bank,* 604 A.2d 521, 533 (Md. Ct. Spec. App. 1992))). Jimenez does not allege any of these "special circumstances," and therefore Defendants did not owe Plaintiff a fiduciary duty. *See id.* Consequently, Jimenez fails to state a claim for breach of fiduciary duty. *See id.*

   5. *§ 1981 claim*

Plaintiff states that he brings this action pursuant to 42 U.S.C. § 1981. Am. Compl. 2, ¶ 4. Section 1981(a) provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). To state a claim for "discrimination under 42 U.S.C. § 1981 in the context of goods and services," such as those that a bank provides, a plaintiff must allege that

> (1) he is a member of a protected class; (2) he sought to enter into a contractual relationship with the defendant; (3) he met the defendant's ordinary requirements to pay for and to receive goods or services ordinarily provided by the defendant to other similarly situated customers; and (4) he was denied the opportunity to contract for goods or services that was otherwise afforded to white customers.

*Boardley v. Household Fin. Corp. III*, 39 F. Supp. 3d 689, 710 (D. Md. 2014) (quoting *Painter's Mill Grille,* 2012 WL 576640, at *6 (quoting *Williams v. Staples, Inc.,* 372 F.3d 662, 667 (4th Cir. 2004)); *see Zeno v. Chevy Chase Bank,* No. PJM–08–2236, 2009 WL 4738077, at *1–2 (D. Md. Dec. 4, 2009) (applying elements in context of bank's alleged refusal to open account for plaintiffs). Plaintiff does not allege that he is a member of a protected class. Nor does he allege that he sought to enter into a contract with Defendants. Rather, he states explicitly that "[h]e was never made aware of any nor did he ever contract or agree to (explicit or implied) with any of the

11

identified interested parties … including 'WELLS FARGO, NATIONAL ASSOCIATION.'" Am. Compl. 6, ¶ 5.h.  He insists that "[t]he asset/mortgage file to CUSIP 316345602 was/is deficient by the absence of any contracts, agreements, affidavits, judgments, invoices, indentures, notices, etc[.], signed or authorized by the Plaintiff."  *Id.* at 4, ¶ 4.  Thus he fails to state a claim under § 1981.  *See Boardley*, 39 F. Supp. 3d at 710.

6. *Civil Conspiracy Claim*

Jimenez avers that Wells Fargo conspired when it "consciously chose to continue the deceptive trade by filtering the fraudulent instrument using their superior knowledge in the administration of banking to hide the security in a 'Pool' of legit instruments," and that "Wells Fargo, N.A. willingly with full knowledge of *all* the circumstances connected to instrument CUSIP 316345602, joined this commercial venture with all of the named interested parties [identified in Section B of the Amended Complaint].  Am. Compl. 8, ¶¶ 5-6.

To state a claim for civil conspiracy, Plaintiff must allege: "1) A confederation of two or more persons by agreement or understanding; 2) some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and 3) actual legal damage resulting to the plaintiff." *Neto v. Rushmore Loan Mgmt. Servs., Inc.*, No. DKC-16-1056, 2017 WL 896890, at *6 (D. Md. Mar. 7, 2017) (quoting *Windesheim v. Larocca*, 116 A.3d 954, 975 (Md. 2015)).  Significantly, "[c]onspiracy is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Id.* (quoting *Haley v. Corcoran*, 659 F. Supp. 2d 714, 726 (D. Md. 2009) (citing *Alleco Inc. v. The Harry & Jeanette Weinberg Foundation, Inc.*, 340 Md. 176, 189 (1995))). Because Plaintiff fails to state a claim under any of his other counts, Plaintiff's civil conspiracy claim fails as well.  *Se id.*; *Clark v. Md. Dep't of Pub. Safety & Corr. Servs.*, 247

F. Supp. 2d 773, 777 (D. Md. 2003) (concluding that the plaintiff's "state law claim for civil conspiracy must fail" because he "failed to state a claim for any substantive torts").

### **"Three Strikes Rule"**

Jimenez is proceeding in forma pauperis. ECF No. 17. The in forma pauperis statute provides that a prisoner may not bring a civil action without complete prepayment of the appropriate filing fee if the prisoner has brought, on three or more occasions, an action or appeal in a federal court that was dismissed as frivolous, as malicious, or for failure to state a claim upon which relief may be granted, unless the prisoner is in "imminent danger of serious physical injury." 28 U.S.C. § 1915(g). Jimenez is incarcerated and for the reasons stated above, his Complaint fails to state a claim upon which relief may be granted and will be dismissed. Accordingly, a "strike" will be assigned to Jimenez pursuant to 28 U.S.C. § 1915(g).

This is at least the second "strike" assigned to Jimenez under this provision. *See* Order & Jmt. in *Jimenez v. Fourth Judicial District Attorney's Office, et al.,* No. 16-1239 (10th. Cir. 2016), ECF No. 1-8. In that case, Jimenez alleged similar facts[4] and the United States District Court for the District of Colorado dismissed his action as frivolous. *Id.* at 3. and the Tenth Circuit affirmed on appeal, finding that he failed to allege sufficient facts to connect the security to his criminal case. *Id.* at 7.

---

[4] In that case, Jimenez alleged that "various Colorado officials generated and sold financial securities based on his criminal case." *Jimenez,* No. 16-1239, slip op. at 3. Specifically, he "claim[ed] that 'the Fourth Judicial District … took out a mortgage loan[] for prosecution' of the charges against him, and then 'converted [Jimenez] into the principal obligor/surety of the loan that inevitably defaulted,'" and as a result "there [was] a publicly-traded security that he believe[d] [was] 'associated' with his criminal case." *Id.* at 6-7. The District of Colorado "dismissed Jimenez's action as frivolous," and on appeal, the Tenth Circuit affirmed the dismissal, concluding that, even though Jimenez "put forth sufficient facts that a security does exist with the SEC identification number he has identified, he failed to allege any facts connecting that security to his case, other than stating broadly that he discovered it was 'associated.'" *Id.* at 3, 7.

**Conclusion**

For these reasons, Jimenez's Motion to Strike, ECF No. 24, will be denied; and Defendants' Motion to Dismiss the Amended Complaint, ECF No. 19, will be granted. Given that Jimenez already amended his pleadings in response to the deficiencies raised in Defendants' original motion to dismiss, *see* Am. Compl. 1, his case will be dismissed with prejudice, as an inability to cure deficiencies in an amended complaint indicates that further attempts to amend would be futile. *See Cozzarelli v. Inspire Pharm., Inc*., 549 F.3d 618, 630 (4th Cir. 2008); *Weigel v. Maryland*, 950 F. Supp. 2d 811, 825 (D. Md. 2013). Jimenez will be assigned a "strike" pursuant to 28 U.S.C. § 1915(g). A separate order follows.

April 4, 2017                                         /S/
Date                                                  Paul W. Grimm
                                                      United States District Judge